## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CHARLES CHRISTOPHER MCGUIRE,**

     **Plaintiff,**                        **CASE NO.:**

**vs.**

**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**a foreign for-profit corporation,**
**EQUIFAX INFORMATION SERVICES, LLC,**
**a foreign limited liability company, and**
**RTO FINANCE, LLC,**
**a foreign limited liability company.**

     **Defendants.**

_____/

COMES NOW Plaintiff, Charles McGuire, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and RTO Finance, LLC. ("RTO").

## <u>INTRODUCTION</u>

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendants, Experian, Trans Union and RTO. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the

1

preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff following his bankruptcy discharge.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, because Plaintiff alleges violation of the FCRA, a federal law. 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.  Venue in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District,  are otherwise subject to personal jurisdiction in this District, and a substantial part  of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.  Plaintiff is a natural person who resides in Duval County, Florida

5.  Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

6.  Defendant Experian is a consumer reporting agency, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

2

consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian can be served at its headquarters located at 475 Anton Boulevard, Costa Mesa, CA 92626.

7. Defendant Equifax is a consumer reporting agency, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian can be served at its headquarters located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

8. RTO Finance, LLC ("RTO") is a corporation with its principal place of business located at 104 Mauldin Rd, Ste 1, Greenville, SC 29605-1221 which conducts business in the State of Florida.

9. RTO regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

10. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Florida and conducted business in Florida on a routine and systematic basis.

11. Defendants, Experian and Equifax, regularly engage in the business

of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Defendants, Experian and Equifax, regularly furnish consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and each is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

12. During all times pertinent to this Complaint, Defendants acted through their authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13. Any violation by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**RELEVANT FACTUAL BACKGROUND
AS TO CREDIT REPORTING AGENCIES**

14. The credit reporting agency Defendants Equifax and Experian, report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15. Defendants' credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and

4

phone numbers;  (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and  includes the type of credit account, credit limit or loan amount, account balance,  payment history, and status; (iii) <u>Public Record Information</u>: this section typically  includes public record information, such as bankruptcy filings; and (iv) <u>Credit  Inquiries</u>: this section lists every entity that has accessed the consumer's file  through a "hard inquiry" (i.e., consumer-initiated activities, such as applications  for credit cards, to rent an apartment, to open a deposit account, or for other  services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be  independently gathered by Defendants, or acquired from third party providers/vendors or repositories, including computerized reporting services like  PACER.

17. The information Defendants include in a credit report contributes to a  consumer's creditworthiness and determines their FICO Scores.

18. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon credit reports from the CRAs (like Defendants) to make  lending decisions. Those institutions also use FICO Scores and other proprietary  third-party algorithms – "scoring" models – to interpret the information  in a consumer's credit report.

5

19. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer creditworthiness to future potential creditors.

20. FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

21. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed. In  factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency  occurred, and how many delinquent accounts exist. The more severe, recent, and  frequent late payments are, the lower a consumer's FICO Score will be. However,  once a delinquent account has been remedied and the longer the account stays current, the more a consumer's FICO Score should increase.

22. The "amount of debt owed" is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the Amount of currently owed debts is higher than it  actually is, thereby impacting a consumer's credit score.

23. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer credit reports.

DTI compares the total amount a consumer owes to the total amount a consumer earns.

24. A consumer's income, however, is not included in their credit report; only their amount of debt is.

25. Lenders consider a consumer's DTI as an indicator of whether a creditor will approve financing and the credit terms thereof.

26. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

27. Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a credit report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than someone without a bankruptcy discharge.

28. Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as the individual account tradelines.

29. Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as

well as in  individual account tradelines.

30. Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those  that have been reaffirmed or successfully challenged in an adversary proceeding,  are discharged; both such exceptions are rare and furthermore identified on the  individual consumer's bankruptcy docket sheet.

31. Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary  proceeding can be retrieved from the same sources from which Defendants voluntarily obtained the consumer's bankruptcy case information.

32. Defendants can also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

33. However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

34. Rather than follow reasonable procedures to assure maximum possible  accuracy, as it is required by the FCRA, Defendants frequently report information  regarding pre-bankruptcy debts without supporting evidence.

35. In fact, Defendants often publish consumer information that conflicts with the information included in their credit files, contained in public records, or  provided by data furnishers.

8

36. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate reporting following a Chapter 7 discharge.

37. Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate balances, account and payment statuses.

**Plaintiff's Chapter 7 Bankruptcy**

38. Plaintiff filed for a voluntary Chapter 7 Bankruptcy on or about February 10, 2023 in the United States Bankruptcy Court for the Middle District of Florida, case no. 3:23-bk-00299-JAF.

39. Plaintiff properly disclosed a debt to North Mill Equipment Finance on Schedule F of his bankruptcy Petition.

40. There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

41. Accordingly, Plaintiff received an Order of Discharge signed by United States Bankruptcy Judge, Jerry A. Funk, discharging his personal liability on the dischargeable debts on May 16, 2023.

42. The Clerk of the Middle District, Gustava Winters, mailed Notice of the Discharge to North Mill Equipment Finance of the Discharge on May 18, 2024.

43. Plaintiff was eager to begin working on improving his credit following his bankruptcy and obtaining his "fresh start".

44. Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants, Experian and Equifax prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including  the reference number, court, filing date, and discharge.

45. Defendants Experian and Equifax, also reported Plaintiff's credit history, including names of  credit accounts, account numbers, account types, responsibility for the account  (i.e., individual or joint accounts), the date the accounts were opened, status, and  the date of the last status update.

46. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants Experian and Equifax, are generally required to report the status of these  debts as discharged through bankruptcy, unless the furnishers provide information  showing that a debt was excludable from discharge.

47. Upon information and belief after the bankruptcy discharge, the three major credit reporting agencies, Experian, TransUnion and Equifax reported

the North Mill Equipment Account as discharged in bankruptcy or ceased reporting the debt at all.

48. However in July 2024, to Plaintiff's surprise, Experian began reporting and reinserted the North Mill Equipment Finance account as delinquent as follows:

## NORTH MILL EQUIPMENT FI
**POTENTIALLY NEGATIVE**

 **Account Info**

| | |
|---|---|
| Account Name | NORTH MILL EQUIPMENT FI |
| Account Number | C07088XXXXXXXXXXXX |
| Account Type | Lease |
| Responsibility | Co-signer |
| Date Opened | 05/04/2022 |
| Status | Repossession. $80,044 past due as of Jun 2024. |
| Status Updated | June 2024 |
| Balance | $80,044 |
| Balance Updated | 06/30/2024 |
| Recent Payment | $2,108 as of 1/9/2023 |

49. Defendant Experian knew or had reason to know that its reporting of the North Mill Equipment Account was inaccurate because it was also reporting Plaintiff's Chapter 7 bankruptcy as filed in on February 10, 2023 and discharged on May 16, 2024.

50. Defendant Experian also was not reporting any other pre-bankruptcy

debts with a balance; therefore, Experian had notice that Plaintiff could not owe debt on an account that was opened before his bankruptcy was filed.

51. Defendant Experian is reporting that Plaintiff owes debt that he does not actually owe, thereby damaging his credit scores.

52. Equifax and Trans Union were not reporting the North Mill Account at all.

53. Defendant RTO Finance LLC (the "Account")(Acct # 4143) was inadvertently not listed in Plaintiff's bankruptcy schedules, however, it was still included in Plaintiff's discharge.

54. Equifax, despite disclosing Plaintiff's bankruptcy under the Public Record section of its consumer report, Reference Number:  2300299, continued to list the RTO Finance LLC account with a balance owed.

55. Defendant Equifax reported Plaintiff's RTO Finance LLC (the "Account") (Acct # 4143) opened in September 20, 2021,  inaccurately.  As of July 20, 2024, the account was reported as due monthly and a balance was reported of $1,287 despite the 2023 Discharge.

**PLAINTIFF'S DISPUTES**
**RTO Finance Dispute**

56. On August 29, 2024, Plaintiff spoke with RTO Finance, LLC and informed them that the debt had been discharged in bankruptcy and provided

12

his bankruptcy attorney's contact information.

57. On August 30, 2024, Plaintiff sent a dispute letter to Equifax concerning inaccurate information regarding reporting the RTO account (# 4143) that had been discharged in bankruptcy.

58. After receiving Plaintiff's dispute regarding RTO, upon information and belief, Defendant Equifax properly contacted Defendant RTO, but failed to properly correct the account.

59. On September 6, 2024, Equifax responded to Plaintiff's dispute and did update the status as "Account Included in Bankruptcy", however, it reported the Date of Major Delinquency as "August 2024." As Plaintiff received his Discharge on May 16, 2023, it was not accurate to report he was delinquent in August 2024 as it had been discharged three months prior. Furthermore, Equifax reported that he was scheduled for monthly payments of $138 from March, 2024 through July 2024 and also reported payment amounts in months post discharge.

60. After receiving his dispute letter, Equifax failed to update the credit report to properly reflect the reality of Plaintiff's situation and of the federal court record.

61. After receiving Plaintiff's dispute letter, upon information and belief, Defendants Equifax and RTO failed to conduct a reasonable investigation of the accounts.

13

62. Further, after receiving Plaintiff's dispute letter, Defendants Equifax and RTO had enough information available to them, based on the underlying bankruptcy record and documentation, to confirm that the balance was *not* verifiable. This inability to verify the balance or status of the bankruptcy, and yet still confirm it in "maximum accuracy" is a violation of the Fair Credit Reporting Act and the Plaintiff's rights regarding his consumer report.

## North Mill Finance

63. On August 19, 2024, Plaintiff sent a dispute letter to Experian concerning inaccurate information regarding reporting an $80,044 debt and repossession to North Mill Finance that had been discharged in bankruptcy.

64. Equifax responded to Plaintiff's dispute and the North Mill Finance account was removed from his Equifax report.

65. Defendants inaccurately reported that Plaintiff owed balances that he did not actually owe, thereby damaging his credit scores.

66. Defendants inaccurately reported the status of the debt, even though the debt is in fact discharged, Plaintiff is no longer personally liable for the debt, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

67. Consequently, Plaintiff suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also

14

suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)
### as to Experian and Equifax

68. Plaintiff incorporates herein by reference paragraphs 1-67 of this Complaint as though fully set forth herein at length.

69. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

70. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

71. The FCRA requires consumer reporting agencies like Defendants to follow reasonable procedures to assure maximum possible accuracy of

15

consumer information.

72. Defendants Experian and Equifax, negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

73. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information and possess information establishing that the reported information is in fact inaccurate.

74. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

75. Defendants have obtained or have available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

76. Defendants are well aware that the effect of a discharge Order in a no

16

asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

77. Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties.

78. Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in their consumer credit reports.

79. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

80. Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and therefore deprived Plaintiff of his rights under the FCRA.

81. Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

82. Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy

discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

83. Defendants are also on notice from other account tradelines reported by Defendants that indicate those accounts were included in/or discharged in bankruptcy.

84. Defendants are well aware that a discharged debt should not be reported with an outstanding balance after the debt is discharged.

85. In this case, the inaccurately reported debts, North Mill Finance and RTO Finance pertains to debts that Defendants knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero balance.

86. Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

87. Plaintiff has suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

88. Defendants' actions are a direct and proximate cause, as well as a substantial factor in causing Plaintiff's damages.

89. Defendants' actions in violation of 15 United States Code, Section

1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT II**
**CLAIMS AGAINST DEFENDANT EQUIFAX**
**Violations of the FCRA 15 U.S.C. § 1681 _et seq._**
**(Reinvestigation)**
**as to Equifax – RTO Finance Account)**

90. Plaintiff incorporates paragraphs 1 to 67 as though set forth herein.

91. Equifax willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

92. Equifax willfully and/or negligently ignored the information provided to it by Plaintiff and by the results of the other account investigations.

93. Equifax willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report and the errors stated.

94. Equifax willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

95. Equifax willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

96. Equifax negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

97. Equifax willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

98. In response to the request for reinvestigation, Equifax improperly

verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

99. Equifax has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i.

100.     As noted above, Equifax failed to conduct a proper investigation by wholly ignoring the plain language of Plaintiff's disputes and the attached documentation.

101.     Equifax's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

102.      Equifax's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT III
### CLAIMS AGAINST DEFENDANT RTO
### Violations of the FCRA
### 15 U.S.C. § 1681s-2(b)  (Investigation)

103.     Plaintiff incorporates Paragraph 1-67 above as if fully stated

herein.

104.     RTO has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. § 1681s-2(b).

105.     Specifically, RTO violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of disputed information, by failing to review all relevant information provided by the consumer reporting agency, by failing to review Plaintiff's bankruptcy information and docket, the documentation provided, the direct dispute from Plaintiff, and its own entire file as part of such investigation, by failing to accurately communicate the results of its investigation to the consumer reporting agencies, by verifying inaccurate or incomplete information to a consumer reporting agency as part of a reinvestigation of such information disputed by Plaintiff and/or by verifying and continuing to report inaccurate information after notice and confirmation of those errors.

106.     Further, RTO violated 15 U.S.C. § 1681s-2(b) by failing to promptly modify, delete or permanently block information disputed by Plaintiff which it knew or reasonably should have known was inaccurate, obsolete and/or incomplete.

107.     Following the reinvestigation and dispatch of direct notice to RTO via the bankruptcy noticing system, who failed to notify the consumer

reporting agencies to whom it reported credit information that the debt was disputed, in violation of the FCRA, 15 U.S.C. §§ 1681s-2(b) the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(3).

108.    RTO's reinvestigation was not conducted in good faith.

109.    RTO's reinvestigation was not conducted reasonably.

110.    RTO's reinvestigation was not conducted using all information reasonably available to the Defendant.

111.     RTO's reinvestigation was per se deficient by reason of these failures in its reinvestigation of the trade line on Plaintiff's consumer report in light of information it already had.

112.    RTO's actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles Plaintiff to actual damages enumerated in 15 U.S.C. § 1681o and/or 15 U.S.C. § 1681n.

113.    Defendant has violated 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate").

114.    Despite having all the information available to it as the other credit bureaus, the Defendant continued to report inaccurate and harmful information in violation of 15 U.S.C. § 1681s-2(a)(1)(A).

115.     As a result of RTO's conduct, actions, and inactions, Plaintiff has suffered emotional distress, humiliation, mental anguish and damages to his creditworthiness.

116.     RTO's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Charles Christopher McGuire, respectfully requests judgment be entered against Defendants, Experian, Equifax and RTO Finance, for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

## Designation of Lead Counsel Pursuant to Local Rule 2.02(a)

Pursuant to Local Rule 2.02(a) of the Middle District of Florida, the undersigned **Max Story, Esquire** is designated as lead counsel in this case.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Dated this 26th day of November, 2024.

**MAX HUNTER STORY, P.A.**

/s/ Max Story_____
Max Story, Esq.
Florida Bar No.: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
Attorney for Plaintiff